UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

**EDUARDO De GRIJZE,**

    Plaintiff,

v.

**FLORIDA BEAUTY FLORA, INC.,
FLORIDA LOGISTICS OF MIAMI, INC.,
FLORIDA BEAUTY EXPRESS, INC.,
TEMPEST TRANSPORTATION, INC.,
and RALPH MILMAN,**

    Defendants.
_____/

## COMPLAINT

Plaintiff, Eduardo De Grijze, sues the Defendants, Florida Logistics of Miami, Inc. ("FLM"); Florida Beauty Flora, Inc. ("FBF"); Florida Beauty Express, Inc. ("FBE"); Temptest Transportation, Inc. ("TT"); and Ralph Milman.

## JURISDICTION

1.  This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, in that one of De Grijze's claims arises under the laws of the United States. This Court has supplemental jurisdiction over De Grijze's state law claim under 28 U.S.C. § 1367(a) because it is so related to the claim brought by De Grijze under federal law that it forms part of the same case or controversy under Article III of the United States Constitution. This Court has personal jurisdiction over the parties to this action because the Plaintiff De Grijze has subjected himself to the jurisdiction of this Court, over the Defendants FBF, FBE and TT, because they are Florida

Corporations with their principal places of business within the judicial district of this Court, and over the Defendant Ralph Milman, because he is domiciled in Florida within the judicial district of this Court.

## VENUE

2. Venue of this action is properly in this Court pursuant to 28 U.S.C. § 1391(b) in that one or more of the Defendants reside within the judicial district of this Court, a substantial part of the events or omissions giving rise to the claims occurred within the judicial district of this Court, and the Defendants are subject to the Court's personal jurisdiction with respect to this action.

## PARTIES

3. Plaintiff, Eduardo De Grijze, is domiciled in Miami-Dade County, Florida.

4. Defendant Ralph Milman is domiciled in Miami-Dade County, Florida, with his principal business address at 1351 NW 78th Avenue, Miami, Florida 33126. Defendant Milman is the President and Director of Defendant FLM, and he is the President of FBE. On information and belief, Defendant Milman owns and/or controls Defendants FLM, FBF, FBE and TT.

5. Defendant Florida Beauty Flora, Inc., is a Florida for-profit corporation with its principal place of business at 1351 NW 78th Avenue, #205, Miami, Florida 33126. Its agent for service of process is Peter W. Fudali, 20801 Biscayne Blvd., Suite 307, Miami, Florida 33180.

6. Defendant Florida Logistics of Miami, Inc., is a Florida for-profit corporation with its principal place of business at 3400 NW 74th Avenue #1, Miami, Florida 33122. Its agent for service of process is Peter W. Fudali, 20801 Biscayne Blvd., Suite 307, Miami, Florida 33180.

7. Defendant Florida Beauty Express, Inc., is a Florida for-profit corporation with its principal place of business at 1351 NW 78th Avenue, Miami, Florida 33126. Its agent for service of process is Peter W. Fudali, 20801 Biscayne Blvd., Suite 307, Miami, Florida 33180.

8. Defendant Tempest Transportation, Inc., is a Florida for-profit corporation with its principal place of business at 1351 NW 78th Avenue, Miami, Florida 33126. Its agent for service of process is Peter W. Fudali, 20801 Biscayne Blvd., Suite 307, Miami, Florida 33180.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

9. Defendants TT, FBF, FBE and FLM are all affiliated companies and all in the business of transportation in interstate commerce of floral products, brokering the transportation in interstate commerce of floral products, and the business of warehouse storage and distribution in interstate commerce. Each of these companies has annual sales in excess of $500,000.00 per year, and operates in interstate commerce.

10. On or about September 7, 2009, Plaintiff, De Grijze, became employed by Defendant FLM, where he remained employed until on or about April 16, 2014. At all times material, Plaintiff, De Grijze was jointly employed by the Defendants TT, FBF, FBE and FLM, as a matter of law within the meaning of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, as amended by the Portal to Portal Act, 29 U.S.C. §§ 251-262 (collectively "FLSA").

11. At all times material, Plaintiff, De Grijze's duties as an employee were inside sales of freight shipping services, as the duties of an inside salesperson is defined by the FLSA. Virtually all of Plaintiff De Grijze's activities as an employee were performed on a cell phone and/or utilizing the internet, and utilizing instrumentalities of interstate commerce, and selling shipping services for transportation in interstate commerce.

12. Defendants TT, FBF, FBE and FLM, are all closely integrated enterprises, such that they have common ownership and control, common management, and have centralized their bookkeeping, personnel relations and functions, worked out of a non-segregated common office, and have common control over all aspects of the employer-employee relationship, such that they are considered joint employers as a matter of law for all of their collective employees under the FLSA.

13. All of the Defendant companies performed the exact same business activities, and the fact of their separate existence can only be explained by the fact that they were all created in order to avoid heightened scrutiny under US Department of Transportation regulations in the event of an accident or other violation by one of the companies.  Thus, when one of the Defendants' trucks was involved in an accident or other violation of US Department of Transportation regulations, the cargo that Defendants' had contracted to ship would be shifted to one of the other Defendant companies' trucks.

14. In the Defendants' highly-integrated operations, Defendant Ralph Milman was considered the overall boss of the combined companies, and in fact was the person who made the decision to hire Plaintiff De Grijze. Additionally, Frank Ducassi, was in charge of approving all sales of freight shipping for all of the combined Defendant companies.  Joseph Vargo was the bookkeeper for the combined Defendant companies.

15. During all material times, Plaintiff De Grijze's work as an employee of Defendant FLM benefitted all of the Defendant companies, all of the Defendant companies shared Plaintiff De Grijze's services, Plaintiff De Grijze acted directly or indirectly in the interest of all of the Defendant companies, the Defendant companies were not disassociated with respect to the

employment of Plaintiff De Grijze, and all of the Defendant companies are deemed to have shared control over the Plaintiff De Grijze.

16. During all material times, all of the Defendant companies' non-segregated premises and equipment were utilized for the Plaintiff, De Grijze's work as an employee, the work of the Plaintiff, De Grijze, shifted among the Defendant companies, Plaintiff De Grijze's work was integral to the work of all of the Defendant companies, and the responsibility for the contracts created by the Plaintiff De Grijze's work passed from one of the Defendant companies to another.  Additionally, all of the Defendant companies supervised Plaintiff De Grijze's work, and Plaintiff De Grijze worked for all of the Defendant companies.

17. At all material times, the Defendant Milman was an employer, along with the Defendant companies, within the meaning of the FLSA because he acted "directly or indirectly in the interest of the employer(s) in relation to the employee (Plaintiff De Grijze)," and exercised control over significant aspects of Plaintiff De Grijze's employment with the Defendant companies and the employment policies of the Defendant companies.

18. At all material times, De Grijze's duties as an inside salesperson for the Defendants involved work that averaged in excess of 40 hours per week.  In violation of the FLSA, De Grijze was not paid for any of the overtime he worked.

19. Under the terms of De Grijze's employment, he was to be paid a salary of $45,144 per year, which was paid on a periodic basis by a check from the Defendant FLM.  In addition to his regular salary, De Grijze was to be paid a commission of ½ of 1% of his sales, which commission check was typically paid to him from Defendant FBE, although FBE wrongfully deducted from the commissions due him amounts that were not chargeable to him under the terms of his employment and not authorized by him.  Plaintiff De Grijze continually

5

asked for clarification as to why the deductions were made from his commissions, but the Defendants continually refused to explain the deductions.

20. The FLSA entitles De Grijze to one and one half times his "regular rate of pay" for each hour he worked over 40 in a week.  De Grijze's regular rate of pay is defined by the FLSA as including "all remuneration" he received for his work in any given week, divided by the number of hours the remuneration was intended to cover, in this case 40 hours.  De Grijze's "regular rate of pay," is therefore calculated by taking his salary of $45,144, adding to it all bonuses earned by him in a year, dividing that amount by 52, for the number of weeks in a year, and then dividing that figure by 40, the number of hours in a week.

21. For the year 2012, the amount of commissions paid to De Grijze were $27,857.00.  This amount was claimed by De Grijze on his tax return for 2012, despite the fact that his employer FLM failed to properly include such amounts in his employee's W-2 tax statement, or withhold and match all FICA taxes.  Even if FLM sought to treat him (incorrectly) as an independent contractor, which he was not, it also failed to provide him with a 1099 of such commissions.[1]

22. For the year 2013, the amount of commissions paid to De Grijze were $28,387.92.  Unlike the year 2012, De Grijze was issued a 1099 from FBF for this amount, even though he was not an independent contractor.  This amount should have been included in De Grijze's W-2 wage statement, and his employer should have withheld and matched his FICA taxes, but it did not.

---

[1] On January 19, 2015, for the first time, and after De Grijze had produced copies of his tax returns showing the commissions he was paid, De Grijze's employer FLM issued him a 1099 for the amount of commissions paid to him in 2012, $27,857.00.

23.     For the year 2014, De Grijze earned commissions in the approximate amount of $2,000.00 per month, for a total amount of commissions from the beginning of the year until the date of the separation of his employment, April 16, 2014, of approximately $7,000.00. Such amounts were wrongfully withheld from him by the Defendants, and no FICA withholding or matching taxes were paid by his employer on these amounts.

24.     For the year 2012, De Grijze's regular rate of pay for purposes of calculating the amount he is owed for overtime is $73,001.00 (salary plus estimated commissions), divided by 52 (weeks in year), divided by 40 (working hours in week), equaling approximately $35.10. This number for De Grijze's regular rate of pay as defined by the FLSA is an estimate because additional amounts will have to be added in after the correct amount of De Grijze's commissions are added back in. Based on this regular rate of pay figure, De Grijze's overtime premium rate (one and one half times his regular rate of pay) is $52.64 per each hour he worked overtime in 2012.

25.     For the year 2013, De Grijze's regular rate of pay for purposes of calculating the amount he is owed for overtime is $73,531.92 (salary plus estimated commissions), divided by 52 (weeks in a year), divided by 40 (working hours in week), equaling approximately $35.35. This number for De Grijze's regular rate of pay as defined by the FLSA is an estimate because additional amounts will have to be added in after the correct amount of De Grijze's commissions are added back in. Based on this regular rate of pay figure, De Grijze's overtime premium rate (one and one half times his regular rate of pay) is $53.03 per each hour he worked overtime in 2013.

26.     For the year 2014, De Grijze's regular rate of pay for purposes of calculating the amount he is owed for overtime for the approximately 15 weeks he worked in 2014 (January 1

through April 16 is $20,522.31 (15 weeks of salary plus $7500 for 15 weeks of estimated commissions), divided by 15 (weeks worked), divided by 40 (hours in week), equaling approximately $34.20.  This number for De Grijze's regular rate of pay as defined by the FLSA is an estimate because additional amounts will have to be added in after the correct amount of De Grijze's commissions are added back in.  Based on this regular rate of pay figure, De Grijze's overtime premium rate (one and one half times his regular rate of pay) is $51.31 per each hour he worked overtime in 2014.

27.     The amount of hours worked by De Grijze was approximately 75 a week on average, making is overtime hours approximately 35 hours per week.

28.     Based on the overtime premium calculations above, De Grijze's overtime premium pay due him for the year 2012 is approximately $1,842.40 per week, or $95,804.80 for the entire year.  This number is calculated by taking the average overtime hours per week (35), multiplying by the overtime premium pay per hour ($52.64), and then multiplying by the number of weeks worked that year (52).

29.     Based on the overtime premium calculations above, De Grijze's overtime premium pay due him for the year 2013 is approximately $1,856.05 per week, or $96,514.60 for the entire year.  This number is calculated by taking the average overtime hours per week (35), multiplying by the overtime premium pay per hour ($53.03), and then multiplying by the number of weeks worked that year (52).

30.     Based on the overtime premium calculations above, De Grijze's overtime premium pay due him for the year 2014 is approximately $1,795.85 per week, or $26,937.75 for the entire portion of a year he worked.  This number is calculated by taking the average overtime

hours per week (35), multiplying by the overtime premium pay per hour ($51.31), and then multiplying by the number of weeks worked that year (15).

31. Based on the above calculations, the total amount of overtime premium pay due to De Grijze for the indicated periods is $219,257.15. In addition thereto, De Grijze is statutorily entitled to liquidated damages in an equal amount of the premium pay due him, or $219,257.15, for a total amount of $438,514.30, together with prejudgment interest and reasonable attorneys' fees.

32. To pursue his claims raised in this complaint, De Grijze has been required to retain legal counsel for which he is obligated to pay them a reasonable fee.

## COUNT I

## **VIOLATION OF FAIR LABOR STANDARDS ACT**

33. Plaintiff, DeGrijze, incorporates paragraphs 1 through 32 by reference.

34. At all material times there was in full force and effect, the FLSA.

35. At all times material, the Defendant companies had employees engaged in commerce or in the production of goods for commerce, and/or had employees handling, selling or otherwise working on goods or materials that were moved in or produced for commerce by a person.

36. At all times material, the Defendant companies had revenues in excess of $500,000.00 per year, and were thus employers within the meaning of the FLSA.

37. At all times material hereto, Defendant Milman was an employer of De Grijze within the meaning of the FLSA.

38. At all times material hereto, Plaintiff DeGrijze was individually engaged in commerce while working as an employee for the Defendants.

39. Plaintiff worked for Defendants from approximately September 2009 through April 2014.

40. Plaintiff worked for Defendants as an inside salesperson.

41. Plaintiff was paid on a salary plus bonus basis at the rate of $45,000.00 per year, plus ½ of 1 percent of the sales generated by Plaintiff.

42. During each of the workweeks worked by Plaintiff, Defendants failed to pay him overtime for each hour worked by Plaintiff over 40 in a week in violation of the FLSA.

43. Plaintiff worked approximately 35 hours of overtime per week for which Plaintiff was not paid his overtime wages in violation of the FLSA.

44. Defendant employers' violation were willful within the meaning of the FLSA because the employer either knew or showed reckless disregard as to whether its conduct was prohibited the FLSA.

45. In failing to pay overtime to the Plaintiff, the Defendant employers did not have a good faith belief that their refusal to pay overtime to the Plaintiff were not in violation of the FLSA.

46. Plaintiff is entitled to overtime wages from the Defendants jointly and severally in the amount of his regular rate of pay, calculated as follows:  First, by calculating Plaintiff's regular rate of pay per hour by taking Plaintiff's salary for a week, adding in the commissions earned by Plaintiff for such week, and then dividing the total by the number of hours Plaintiff was to have worked in a week. Next, by multiplying such hourly rate by 1.5 to arrive at the premium overtime rate owed to Plaintiff (time and one half). Then, by taking Plaintiff's overtime

premium rate and multiplying such amount by the number of hours worked by plaintiff over 40 in such week.

47. Because the violations of the FLSA by the Defendants were willful, the Plaintiff is entitled to overtime for the three year period prior to the date of the filing of this Complaint.

48. In addition, Plaintiff is owed an additional amount equal to the amount of unpaid overtime wages as liquidated damages.

49. In addition, Plaintiff was required to hire legal counsel to pursue these claims, and is obligated to pay a reasonable fee for his services.  Plaintiff is entitled to recover his reasonable attorneys' fees and costs incurred to pursue his claim for overtime under the FLSA.

COUNT II

**BREACH OF EMPLOYMENT AGREEMENT**

50. Plaintiff incorporates paragraphs 1 through 32 herein by reference.

51. Plaintiff's employment contract entitled him to commissions of ½ of 1 percent of all sales made by him.

52. Defendants violated this agreement by deducting from his commissions amounts that were chargeable to him.

53. By way of example, Defendants deducted a "lumper charge" from De Grijze's commissions, even though such charges were not his responsibility under his agreement.

54. By way of another example, Defendants deducted charges for a deliver that was not properly refrigerated, resulting in damages to the load.  This amounts were not De Grijze's responsibility under his agreement.

55. Defendants owe De Grijze the full amount improperly deducted from his commissions, together with reasonable attorneys' fees pursuant to Fla. Stat. § 448.08.

## COUNT III

## MONEY HAD AND RECEIVED/UNJUST ENRICHMENT

56. Plaintiff incorporates paragraphs 1-32 herein by reference.

57. Plaintiff conferred a benefit on Defendants in the form of sales of their services, for which Defendants agreed to pay Plaintiff a commission of ½ of 1 percent of his sales.

58. Defendants appreciated such benefit, and accepted and retained such benefit.

59. Defendants wrongfully deducted amounts from the commissions due to Plaintiff under his employment agreement.

60. The deductions made by the Defendants were occasioned because of Defendants' fraud, imposition, extortion or undue advantage against Plaintiff, and it would be inequitable under the circumstances for Defendants to refuse to pay Plaintiff his full commissions without deductions.

61. Defendants owe to Plaintiff the full amount of his commissions without the wrongful deductions made by them, together with attorneys' fees pursuant to Fla. Stat. § 448.08.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

(1) that this Court cause proper process to issue requiring the Defendants and each of them to answer this Complaint;

(2) that this Court empanel a jury to try all issues of fact;

(3) that this Court enter judgment in favor of the Plaintiff and against Defendants, jointly and severally, for the overtime wages owed to plaintiff, being one and one-half times the Plaintiff's regular rate of pay for each hour worked over 40 in a week for the three-year period preceding the filing of the Complaint in this cause, plus all amounts wrongfully deducted from

Plaintiff's earned commissions, all in an amount in excess of $219,257.15, plus all amounts deducted from Plaintiff's commissions;

(4) that this Court award to Plaintiff liquidated damages equal to the total amount of the overtime premium pay owed to him, in an amount in excess of $219,257.15;

(5) that this Court award to Plaintiff pre-judgment interest on the total amount owed;

(6) that this Court award to Plaintiff reasonable attorneys' fees and costs under the FLSA and Fla. Stat. § 448.08, together with an appropriate multiplier; and

(7) that this Court award to Plaintiff such other, further relief to which Plaintiff may be entitled.

Dated January 22, 2015.

Respectfully submitted,

*/s/ D. Andrew Byrne*
D. Andrew Byrne, Esq.
Fla. Bar No. 0905356
New York Bar No. 4543120
Tenn. Bar No. 11431
**ANDREW BYRNE & ASSOCIATES, P.A.**
1111 Brickell Avenue, 11th Floor
Miami, Florida 33131
305-433-7835
305-433-5102 (fax)
andrew@byrnepa.com

Attorney for Plaintiff